MICHAEL A. ISAACS (SBN 99782)
michael.isaacs@dentons.com
ANDREW S. AZARMI (SBN 241407)
andrew.azarmi@dentons.com
DENTONS US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
Telephone: (415) 267-4000
Facsimile: (415) 267-4198

Attorneys for JANINA M. HOSKINS, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>MONICA H. HUJAZI,<br><br>Debtor. | Case No: 13-30477 HLB<br>Chapter 7<br>Hon. Hannah L. Blumenstiel |
| JANINA M. HOSKINS, Trustee,<br><br>Plaintiff<br><br>v.<br><br>MONICA HUJAZI,<br><br>Defendant. | Adversary Proceeding No.<br><br>**COMPLAINT FOR DENIAL OF DISCHARGE**<br>**(11 U.S.C. §727)** |

105917518\V-2

Plaintiff Janina M. Hoskins alleges as follows:

1. Chapter 7 Trustee Janina M. Hoskins ("the Trustee" or "Plaintiff") brings this adversary proceeding on behalf of the bankruptcy estate of Monica H. Hujazi ("Debtor") requesting the Court deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4).

## JURISDICTION/VENUE

2. An involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the Debtor on March 1, 2013. Dkt. 1. An Order for Relief was entered by the Bankruptcy Court on November 30, 2015. Dkt. 342. On December 31, 2015, the Court issued its Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline, naming the Trustee as Chapter 7 Trustee of the Debtor's bankruptcy estate. Dkt. 365.

3. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 151, 157(b)(2), and 1334, and under Rule 5011-1 of the Bankruptcy Local Rules for the Northern District of California.

4. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (J).

5. Venue is proper under 28 U.S.C. § 1409.

6. Plaintiff is informed and believes that the Defendant is an individual who resides in California and who is the Debtor in the above case.

## 2400 FILBERT STREET PROPERTY

7. Debtor provided her asset schedules listing all real property she owned or had an interest in on January 21, 2016. Dkt. 384. Property located at 2400 Filbert, Oakland, CA 94607 (the "Property"), is listed in her bankruptcy schedules. Dkt. 384 at p. 5.

8. After the Order for Relief was entered, and even after the Property was listed on Debtor's bankruptcy asset schedules, the Debtor engaged in negotiations to sell the Property to a third-party buyer without the Trustee or the Court's permission or knowledge. On or about February 23, 2016, the Debtor signed and sent a purchase agreement counteroffer to a third party offering to sell the Property for $5,000,000 ($5 million dollars). A copy of the purchase agreement contract is attached as **Exhibit A.** The sale did not close—but not for want of Debtor's trying. The

105917518\V-2

2

Case: 17-03087   Doc# 1   Filed: 12/15/17   Entered: 12/15/17 12:49:42   Page 2 of 7

unconsummated purchase agreement, *i.e.*, Exhibit A, shows that multiple offers and counteroffers were sent back and forth between the Debtor and her third-party buyer, even after the Order for Relief had been entered against the Debtor. This was not disclosed to the Trustee or the Court. Nor did the Debtor seek the Court's permission for this attempted sale.

9. Also in 2016, after the appointment of the Trustee, the Debtor made efforts to lease the Property, a large commercial property in West Oakland, through one of her d/b/a companies, Bay Cities Properties. A true and correct copy of a photograph taken of the Property by the Trustee's brokers in October 2016 is attached as **Exhibit B.** This photograph, when blown up to an appropriate viewing size, clearly depicts two "FOR LEASE" signs hanging from the roof containing contact information for Bay Cities, the Debtor's personally-owned, fictitious property management business. The Debtor's leasing efforts were not disclosed to the Trustee or the Court. Nor did the Debtor seek the Court's permission to lease the Property.

10. After the Order for Relief was entered, the Debtor also accepted a lease agreement for tenancy in the Property from Elmer Shannon d/b/a Safe Movers. A true and correct copy of the declaration of Rory K. Keller, the purported property manager for the Property, confirming Safe Movers' tenancy is attached as **Exhibit C.** Ex. C, ¶ 6. This tenancy creation was not disclosed to the Trustee or the Court. The funds received were not turned over to the Trustee. Nor did the Debtor seek the Court's permission for this action.

11. The Debtor initially accepted the security deposit and rent payments of $1,000 per month for Safe Movers' tenancy in cash, Ex. C, ¶ 6, but later accepted checks made out to her personally. A copy of one such check, dated September 20, 2016, is attached as **Exhibit D**. The memo line of this check notes "rent 2400 Filbert." Ex. D, memo field. The receipt of funds from Safe Movers was not disclosed to the Trustee or the Court. The funds received were not turned over to the Trustee. Nor did the Debtor seek the Court's permission for this unauthorized and undisclosed source of income.

12. With regard to Rory Keller's position as property manager, the Debtor relocated Ms. Keller from 376 Ellis Street to the Property in late 2011. Ex. C, ¶ 2. Thereafter, the Debtor received a security deposit of $1,500, and monthly rent payments of $750 in cash from Ms. Keller

in exchange for her tenancy. Ex. C, ¶ 3. The Debtor also purported to employ Ms. Keller as the property manager for the Property, and provided her with business cards identifying Ms. Keller as the Debtor's Regional Property Manager. Ex. C, ¶ 4. Ms. Keller was a tenant of the Property, and paid rent to the Debtor personally. This also was not disclosed to the Trustee or the Court. Nor did the Debtor seek the Court's permission.

13. In short, the Debtor did not disclose to the Trustee or the Court any information about the purchase offer or her counteroffer for the Property, seeking lessors for the Property, her creating a tenancy at the Property with Safe Movers, her creating a tenancy at the Property with Ms. Keller, her employing receiving money from Ms. Keller, or the cash and check payments that she received under the tenancies she created. Yet all of this conduct occurred, at least in part, after the Order for Relief was entered.

## MONICA HUJAZI TRUST

14. The Debtor provided her Schedule of Statement of Financial Affairs on January 21, 2016. Dkt. 387. Therein, she states "to the best of my knowledge," she did not transfer any property to a self-settled trust or a similar device of which she is a beneficiary. Dkt. 387 at p. 9. This statement was not true and attempted to shield a significant asset from the estate.

15. The Debtor in fact directed that the Monica Hujazi Trust Dated January 22, 2008 be created ("the Monica Hujazi Trust") to take title and possession of distribution and assets received from her mother's estate, the Helena Hujazi Trust. Assets of the Monica Hujazi Trust include interests in Commercial Hujazi, LLC and Sylvan Hujazi, LLC, which in turn own significant real estate assets. These assets were not disclosed in the Schedule of Statement of Financial Affairs. Dkt. 387 at p. 9. These assets should have been disclosed. At the minimum, the Trustee is entitled to at least a 25% interest in the distributions.

16. Moreover, there is evidence indicating that: (1) the Monica Hujazi Trust was funded with fraudulent transfers, (2) the Monica Hujazi Trust was self-settled because it was funded entirely with the Debtor's portion of her mother's estate which she became entitled to receive in 2008 as the result of an estate litigation settlement, and (3) the Monica Hujazi Trust is subject to set aside because the formalities and restrictions required for spendthrift trusts were egregiously

105917518\V-2

4

disregarded and the Monica Hujazi Trust is in fact the alter-ego of the Debtor. *See Hoskins v. Hujazi*, Adversary Proceeding Case No. 17-03079, (N.D. Cal. Bkr. filed Nov. 22, 2017). Any one of these facts, if proven true, should result in the Monica Hujazi Trust being set aside. This is a potentially significant source of recovery for the estate. Yet the Debtor concealed and failed to disclose this significant asset at several key turns, including her schedules.

## MORE CHECKS THE DEBTOR KEPT AFTER THE ORDER FOR RELIEF

17. The Debtor also deposited a number of checks made payable to the Monica Hujazi Trust into her personal checking account after the order for relief was entered. This was not disclosed to the Trustee or the Court. The Debtor did not seek permision to receive and retain these funds, and did not report or account for their receipt or retention.

18. The following chart represents funds received and negotiated by the Debtor after the Order for Relief was entered and the Trustee appointed, all of which were deposited into the Debtor's personal checking account:

| DATE | AMOUNT | NUMBER | PAYOR | ENDORSEMENT |
|---|---|---|---|---|
| 12/22/15 | $2,500 | 0001173 | Commercial Hujazi, LLC | Deposit stamp |
| 12/22/15 | $4,000 | 0001092 | Sylvan Hujazi, LLC | "Monica Hujazi," deposit stamp |
| 3/31/16 | $4,000 | 0001098 | Sylvan Hujazi, LLC | "Monica Hujazi" |
| 6/23/16 | $2,500 | 0001188 | Commercial Hujazi, LLC | "Monica Hujazi" |
| 6/23/16 | $4,000 | 0001103 | Sylvan Hujazi, LLC | "Monica Hujazi" |

Copies of each of these checks are attached as **Exhibit E**.

## 2006 MERCEDES MCLAREN

19. Debtor provided her personal property schedules on January 21, 2016. Dkt. 384. The schedules notes three vehicles: a 2007 Toyota Tundra, a 2010 Acura RDX, and a 2004 Mercedes CLK. Dkt. 384 at p.13-14. No lease of any vehicle is disclosed. Dkt. 384 at p. 13-14; Dkt. 384-2 at p. 5-6. Nor was her ownership or possession of any other vehicle disclosed.

20. Yet the Debtor was in possession of a fourth vehicle at the time she provided her personal property schedules: a 2006 Mercedes McLaren. The Debtor was deposed by creditors on

August 27, 2015. True and correct copies of excerpts of that testimony are attached as **Exhibit F.** The Debtor testified under oath that the Mercedes McLaren was located where she resided currently, that she had arranged for a lease-acquisition contract on the Mercedes McLaren, and that the lease-acquisition contract was paid off in 2012, *i.e.*, pre-petition. Ex. F at 348:7-15, 349:1-8. The Debtor also claimed to have gifted the McLaren to her 16-year old Daughter in April 2013. Ex. F at 347:10-13.

21. The Debtor's "gift" to her daughter was very likely a fraudulent transfer. While estimates for the value of that vehicle vary, by all accounts its value is in the six-figures. At the time of the filing of the petition, the vehicle was not registered with the Department of Motor Vehicles, State of California. Yet the Debtor concealed this significant asset from her creditors, the Trustee and the Court until questioned at her first meeting of creditors. The Debtor failed to disclose the lease-acquisition contract on her schedules. The Debtor's "Schedule G: Executory Contracts and Unexpired Leases" (Dkt. 384-2 at p. 5) lists two executory contracts; but none of them were the "lease" for the McLaren. And there is no mention anywhere in the schedules about this six-figures contract which was open as of the petition date.

22. At her August 27, 2015 deposition, the Debtor also misrepresented the facts when she testified that the payoff of the McLaren had taken place in 2012, i.e. pre-petition. This was untrue. The lease-acquisition contract was not paid off until after the petition date. This conduct was designed to conceal the asset and hinder the Trustee's ability to capture and liquidate the asset.

23. By the Debtor's stipulation and this Court's order, the deadline for objecting to the Debtor's discharge is December 18, 2017. Dkt. 618.

**FIRST CLAIM FOR RELIEF**
Denial of Discharge
11 U.S.C. § 727(a)

24. Plaintiff realleges the allegations set forth above, and incorporates them by reference.

/ / /

25. The Debtor has knowingly and fraudulently received and attempted to obtain money and property which rightly belongs the estate.

26. The Debtor has concealed property of the estate after the filing of the petition.

27. The Debtor has attempted to hinder and frustrate the Trustee's ability to properly administer the estate.

WHEREFORE, Trustee requests entry of judgment revoking the Debtor's Discharge.

## REQUEST FOR JUDGMENT

WHEREFORE, Trustee requests judgment:

A. For entry of judgment denying the Debtor a discharge under 11 U.S.C. § 727(a)(2) and (a)(4).

B. For costs of suit.

C. For all other relief this Court deems appropriate.

DATED: December 15, 2017     DENTONS US LLP

By:    */s/Andrew S. Azarmi*
ANDREW S. AZARMI
Attorneys for Plaintiff JANINA M. HOSKINS,
Trustee in Bankruptcy

105917518\V-2

7